IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **EDGAR BERRIOS, RAYMOND ALLEYNE, MALCOLM MACCOW**, and **VIRGINIE GEORGE**, Plaintiffs, v. **HOVIC, HOVENSA, L.L.C., JOHN PAULUS, DARYL KRAMER, TODD REIDLINGER, JACOBS INDUSTRIAL MAINTENANCE COMPANY, L.L.C., WYATT V.I. INC., JACOBS CONSTRUCTORS, INC., JACOBS ENGINEERING GROUP, L.L.C.** and **WYATT FIELD SERVICE COMPANY** Defendants. | **CIV. NO.: 05-CV-192** |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Daryl Kramer's ("Defendant Kramer" or "Kramer") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). Defendant contends that Plaintiff has failed to state a claim for relief for discrimination, wrongful discharge, or intentional or negligent infliction of emotional distress against Kramer. Plaintiffs oppose the Motion to Dismiss.

### I. Procedural and Factual Background

Plaintiffs originally filed suit against Kramer and the other defendants in this matter in the Virgin Islands Superior Court (then known as the Territorial Court) on September 16, 2002 alleging race-based discrimination as well as claims of wrongful discharge, misrepresentation and intentional infliction of emotional distress in connection with their employment at the

HOVENSA refinery. (Compl. ¶¶ 118-136.) The action was subsequently removed to the District Court of the Virgin Islands by Defendant Wyatt based on federal question jurisdiction on October 10, 2002. The Court remanded the action back to the Superior Court on April 21, 2003. Plaintiffs moved to amend their Complaint to include claims under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. The Complaint was subsequently amended ("First Amended Complaint" or "Amended Complaint") on September 28, 2005 and the matter was removed once again to this Court on December 19, 2005. In the First Amended Complaint, Plaintiffs allege that (1) the Defendants discriminated against Plaintiffs in violation of the Virgin Islands Civil Rights Act ("VICRA") (Count I); (2) HOVENSA and Jacobs acted wrongfully in discharging Plaintiffs (Count II); (3) the Defendants violated Title VII and 42 U.S.C. § 1981 (Count IV); and (4) Defendants engaged in conduct sufficiently outrageous to warrant an award of punitive damages to Plaintiffs (Count VII). (First Amend. Compl. ¶¶ 123-145.) Defendant Kramer filed the instant Motion to Dismiss on February 15, 2006.

In support of the First Amended Complaint, Plaintiffs allege the following pertinent facts. All Plaintiffs are citizens of St. Croix, in the United States Virgin Islands. All are West Indian males. Edgar Berrios ("Berrios") is Hispanic,[1] while Raymond Alleyne ("Alleyne"), Virginie George ("George") and Malcom Maccow ("Maccow") are black. (First. Amend. Compl. ¶¶ 2-5.) HOVENSA, as the owner and operator of the Hess refinery on St. Croix, hires various contractors to perform work in the refinery. (*Id*. ¶ 18.) Defendant Jacobs and Defendant Wyatt were contractors who worked for HOVENSA.[2] (*Id*. ¶¶ 9, 13 18, 23.) Defendant Kramer is a

---

[1] Plaintiffs indicate that Mr. Berrios passed away on June 8, 2005. (Pl. Opp. Ex. 8.)
[2] According to Plaintiff's amended complaint, Jacobs Industrial Maintenance Company, LLC is a joint venture between Industrial Management Corporation and Jacobs Constructors. (First. Amend. Compl.¶ 9.) Jacobs Engineering Group LLC is another Jacobs entity referred herein as the Jacobs Defendants. (*Id*. ¶¶ 11-12.) Wyatt Field Service is the parent company of Wyatt VI, Inc. (*Id.* ¶13.) All Wyatt entities are referred to in Plaintiffs' amended complaint as Wyatt. (*Id*. ¶ 15.)

2

Virgin Islands resident and management employee of Defendant Jacobs Engineering Group, L.L.C. (*Id*. ¶ 16.) Plaintiffs allege that HOVENSA "aided and or required and or acquiesced with Jacobs and Wyatt paying predominately white persons hired stateside higher salaries and benefits and receiving higher positions then [sic] Virgin Islanders who were predominately West Indians, but who had the same or similar qualifications and were performing the same or similar work." (*Id*. ¶ 24.) When work being done by Jacobs was to be transferred to Wyatt, the companies allegedly conspired to transfer a disproportionate number of local West Indian employees to the Turnaround Department and to transfer white employees out of that department so that when the inevitable lay off occurred, more locals would be laid off and more statesiders would retain their employment. (*Id*. ¶ 33.)

Plaintiffs have also made specific allegations regarding the conduct of Defendant Kramer. Some background information is included to provide a context for the allegations. Berrios had been employed at the HOVENSA refinery since 1992 as a Cost Engineer for IMC until he was transferred to the same position at Jacobs/IMC in 1999. (*Id*. ¶¶ 34, 36, 37.) Berrios received less pay and a lower benefit package compared to stateside employees. (*Id*. ¶¶ 37-42.) On June 5, 2001, Daryl Kramer, the site manager for Jacobs scheduled a dinner meeting at the Buccaneer for all Cost Engineers except Berrios, who was the only non-white local Cost Engineer. (*Id*. ¶ 44.) In 2001, HOVENSA and Jacobs transferred Berrios to the Turnaround Department, allegedly in anticipation of terminating him for reduction in force. (*Id*. ¶ 47.) Defendant Kramer was involved in Berrios' transfer to the Turnaround Department. (*Id*. ¶ 52.) On December 31, 2001 Berrios was terminated by Jacobs and Hess. (*Id*. ¶ 50.) White stateside engineers that Berrios trained and who had been hired after Berrios were retained. (*Id*.)

Plaintiff Alleyne worked for various contractors at Hess for seven years, was hired by IMC

3

as a Pipefitter in 1989, and subsequently promoted to Pipefitter Foreman in 1990. (*Id*. ¶ 60.) During Alleyne's tenure at IMC and Jacobs/IMC, he was passed over for supervisory positions that were given to white statesiders. (*Id*. ¶¶ 61-63.) Alleyne did the same work as a Piping Supervisor but did not receive the pay or benefits corresponding to that position. (*Id*.) Alleyne was transferred to the Turnaround Department by Jacobs and Hess. (*Id*. ¶ 68.) In 2001, HOVENSA decided to transfer Alleyne's position to Wyatt. (*Id*. ¶ 70.) Alleyne attempted to apply for a supervisory position with Wyatt but was not allowed to do so directly with Wyatt. (*Id.* ¶ 72.) Alleyne complained that he was being discriminated against and subsequently was not contacted or hired by Wyatt. (*Id*. ¶ 75.) Plaintiffs claim that Kramer was "personally involved in the discriminatory actions against Alleyne." (*Id*. ¶ 79.)

Plaintiff George alleges that after he filed EEOC complaints and lawsuits against HOVENSA and Jacobs/IMC, the Defendants took retaliatory actions against him, suspending him from employment, giving him unfair negative evaluations and unfavorable job assignments, hours of work and pay. (*Id*. ¶¶ 80-83.) George was placed in the Turnaround Department and informed that his position would be eliminated as a result of his Turnaround classification on November 2, 2001. (*Id*. ¶¶ 85-86.) There is no direct reference to Defendant Kramer with regard to George.

Plaintiff Maccow begain working at the Hess refinery in 1991 as Process C Operator. (*Id*. ¶ 102.) In 2000, Maccow went to work for Jacobs/IMC as a B Boilermaker. (*Id*. ¶ 106.) In April 2001, Maccow was promoted to Boilermaker Foreman by Jacobs but was not given pay or benefits corresponding to that position. (*Id*. ¶¶ 107-108.) When given a pay increase, Maccow still received less pay and fewer benefits than predominantly white statesiders doing the same work. (*Id*. ¶ 109.) Maccow learned that his job would be eliminated from Jacobs because he was in the Turnaround Deparment and his job transferred to Wyatt. (*Id*. ¶ 114.) Maccow

4

attempted to apply for a foreman position as a boilermaker with Wyatt but was told that these positions would be offered to statesiders and not to West Indian Virgin Islanders. (*Id*. ¶ 115.) There is no specific reference to Kramer with regard to the alleged discriminatory treatment of Maccow.

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not provide detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff cannot rely on mere " labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* (citations omitted). Rather, a plaintiff must cite enough facts to state a claim to relief that is plausible on its face. *Id*. at 570. To establish facial plausibility, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id*. at 1950. (internal quotations and citation omitted).

## III. Discussion

### A. Virgin Islands Civil Rights Act

The Amended Complaint alleges that "[t]he Defendants have discriminated against the Plaintiffs in their hiring, pay, benefits, promotions, job duties, job responsibilities, evaluations,

and termination as a result of race, color, national origin" and that such actions constitute a violation of the Virgin Islands Civil Rights Acts of the Virgin Islands found in Titles 10 and 24 of the Virgin Islands Code. (First Amend. Compl. ¶¶ 124-125.) Defendant argues that there is no private cause of action pursuant to Title 24, and that Plaintiff has failed to allege facts sufficient to state a claim for discrimination under the statute. (Def. Mem. of Law at 4-5.) Plaintiffs counter that, notwithstanding the limited references to the conduct of Kramer, he remains liable as a co-conspirator in carrying out the discriminatory acts. (Pl. Opp. at 28.) Defendant argues that Plaintiffs should not be allowed to assert a new claim of conspiracy, and that Plaintiffs have failed to allege any actions of Defendant that infringed on the rights of Alleyne and Maccow. (Def. Reply ¶¶ 5-6.)

The Plaintiffs have failed to cite a specific statutory provision underlying their VICRA claim. However, as this Court has held, the pleading rules "do not require that a complaint include the particular statutory provisions underlying each count" but need only "provide sufficient notice of the grounds upon which the claim is based." *Miller v. V.I. Hous. Auth.*, 46 V.I. 623, 625, 2005 U.S. Dist. LEXIS 11146, at *4 (D.V.I. June 3, 2005) (citing *United States v. Jones*, 916 F. Supp. 383, 385 (D.N.J. 1995)).

Plaintiffs' allegations of employment discrimination give Defendant notice that the alleged acts give rise to violations of § 451 of Title 24 (Chapter 17) and § 3 of title 10 (Chapter 1) of the Virgin Islands Code. Section 451 of Title 24 provides in pertinent part that

> (a) Notwithstanding the provisions of any other law it shall be unlawful employment practice or unlawful discrimination:
>
> (1) For an employer *to refuse to hire or employ or to bar or discharge from employment*, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;

> (2) For an employer *to discriminate against* any individual in *compensation or in the terms, conditions, or privileges of employment* because of race, sex, age, religion, color or ancestry.

24 V.I.C. § 451 (emphasis added.)

Section 3(b) of Title 10 provides in relevant part that

> No person, being the owner, proprietor, superintendent, manager, agent, or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, *deny employment* in or at such business to any applicant therefor, or *engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin*, subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. § 3(b) (emphasis added.)

### 1. Private cause of action for employment discrimination claims under VICRA

Defendant correctly asserts that Chapter 17 does not provide for a private cause of action, and thus, Plaintiffs claim of employment discrimination pursuant to Title 24 must be dismissed. *Williams v. Kmart Corp*., 2001 WL 304024, at *2 (D.V.I. Mar. 5, 2001) (citing *Hazel v. Executive Airlines, Inc*., 886 F. Supp. 526, 527 (D.V.I.1995)). As the Court discussed in *Hazel*, Chapter 17, pursuant to § 457(a) merely creates a limited right of action in the nature of a writ of review. *Hazel*, 886 F. Supp. at 527. On the other hand, Chapter 1 does provide for a private cause of action. *Figueroa v. Buccaneer Hotel, Inc*., 188 F.3d 172, 178 (3d Cir. V.I. 1999) (finding that the language of section 7 of chapter 1 of Title 10 created a private cause of action). Section 7 of Title 10 of the Virgin Islands Code provides that

> Whoever, whether as *owner, officer, manager, agent, or employee* of any *business or industrial establishment*, labor organization, place of public accommodation, resort or amusement, or club, violates any of the provisions of this chapter, shall, for each and every such violation, be --
>
> (1) *liable in actual damages*, and in addition, thereto, *to punitive damages* not to exceed

> $5,000 to be recovered in a civil action by the person aggrieved thereby or by any resident of the United States Virgin Islands to whom the person aggrieved may assign his cause of action; and
>
> (2) fined not more than $2,000 or imprisoned not more than one year, or both.
>
> The owner or owners of any business where an offense mentioned herein has been *committed by his or its officer, manager, agent, or employee*, such owner or owners shall be *severally and/or jointly liable with the offender* for the actual and punitive damages provided for herein.

10 V.I.C. § 7 (emphasis added.)

### 2. Sufficiency of facts to support claim of employment discrimination under 10 V.I.C. § 3.

In order to avoid dismissal pursuant to 12(b)(6), Plaintiffs have to present factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs' First Amended Complaint makes limited reference to Kramer's involvement in the alleged discriminatory conduct of his employer Jacobs and HOVENSA. The Amended Complaint states that (1) Kramer scheduled a dinner meeting for Cost Engineers that excluded Berrios; (2) Kramer was involved in Berrios' transfer to the Turnaround Department; and (3) Plaintiffs claim that Kramer was personally involved in the discriminatory actions against Alleyne. (First Amend. Compl. ¶ 44, 47, 52.) However, Plaintiffs also argue in their Opposition that because Kramer acted in concert with the Defendants HOVENSA, Jacobs and Wyatt, he is liable for the actions of the other Defendants as a co-conspirator. (Pl. Opp.¶ 28, ¶¶ 30-32.)

Defendant Kramer questions Plaintiffs' right to allege conspiracy subsequent to the filing of the Amended Complaint. However, as stated above with respect to identifying the statute under Titles 10 or 24, a complaint need only "provide sufficient notice of the grounds upon which the claim is based." *Miller v. V.I. Hous. Auth.*, 46 V.I. at 625. Therefore, if Plaintiffs

have alleged facts sufficient to make out the elements of conspiracy in the Amended Complaint, the claim of conspiracy need not be listed as a separate count. *Doe ex rel. Doe v. Baxter Healthcare Corp.*, 178 F. Supp. 2d 1003, 1018 (S.D. Iowa 2001) (failure to plead civil conspiracy in amended complaint not preclude court from ruling on that issue where complaint sufficiently described the conduct comprising the alleged conspiracy).

### a. Civil conspiracy

Under Virgin Islands law, a civil conspiracy consists of an agreement or combination to perform a wrongful act that results in damage to the plaintiff. A conspiracy may also consist of an agreement to do a lawful act by unlawful means." *Shomo v. Mugar Enterprises, Inc.*, 2009 WL 3181936, at *5 (D.V.I. 2009) (citing *Gov't Guar. Fund of Repub. of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 456 (D.V.I.1997) (quotations omitted)). *See also Government Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 457 (D.V.I. 1997) ("[t]he essence of a civil conspiracy is two or more persons agreeing in some form and acting on a desire to accomplish an unlawful end."). "[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso*, 588 F.3d at 185. However, a conspiracy can be proven by circumstantial evidence. *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001). "An express agreement among all conspirators is not a necessary element of civil conspiracy as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result." *Fisher v. Borough of Doylestown*, 2003 WL 22937781, at *2 (E.D. Pa. Dec. 10, 2003) (internal quotations and citation omitted). Moreover, "[t]he question of whether an agreement exists is for the jury to decide "so long as there is a possibility that the jury can infer from the circumstances that [the alleged conspirators] had a meeting of the minds and thus reached an

9

understanding to achieve the conspiracy's objectives."" *Fisher*, 2003 WL 22937781, at *3 (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754 (1980)).

While an overt act in furtherance of the conspiracy is required, "[n]ot every conspirator must commit an overt act . . . so long as at least one does." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (citing *Beck v. Prupis*, 529 U.S. 494, 503 (2000)). Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).

In this case, the unlawful act charged is a violation of Plaintiffs' civil rights pursuant to 10 V.I.C. § 3, which prohibits an employer or employee from "deny[ing] employment in or at such business to any applicant therefor, or engage[ing] in or permit[ting] any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin." Moreover, 10 V.I.C. § 7 specifically assigns liability to "[a]ny person who conspires with another person" to engage in such discrimination and holds that person "liable as a principal violator and subject to all of the [same] penalties."

The Amended Complaint states that HOVENSA "aided and acquiesced with Jacobs and Wyatt" in carrying out discriminatory practices against West Indian Virgin Islanders with respect to limitations on hiring and compensation, and promotions. (First Amend. Compl. ¶¶23-24). The Amended Complaint also alleges that there were discriminatory practices in selecting West Indians for termination when the workforce was going to be reduced:

> When it was determined that some of the work being done by Jacobs would be transferred to Wyatt, the companies conspired to transfer a disproportionate number of local West Indian employees to the Turnaround Department and to transfer white stateside employees out of the Turnaround Department. That way, since the lay off

10

would be predominantly in the Turnaround Department as a result of that work being transferred to Wyatt, the statesiders who were predominately[sic] white would retain their employment and the locals would be laid off to seek other employment.

(First Amend. Compl. ¶ 33.)

Plaintiffs allege specifically that Kramer was involved in Berrios' transfer to the Turnaround Department, an integral part of the scheme to terminate Plaintiffs as opposed to predominantly white statesiders. (*Id*. at 52.) Viewing the facts alleged in the light most favorable to the Plaintiffs as the nonmoving party, the Court concludes that the act, within the scheme alleged by Plaintiffs, constitutes an overt act in furtherance of the conspiracy, at least with respect to the conspiracy to terminate Plaintiffs. Furthermore, taking as true for purposes of this motion the allegations concerning Kramer's position at Jacobs, and the alleged relationship between Jacobs and HOVENSA, a reasonable jury could find that Kramer and other defendants had "reached an understanding to achieve the conspiracy's objectives." *Fisher*, 2003 WL 22937781, at *3. The Court concludes that Plaintiffs have sufficiently pled a civil conspiracy as to Defendant Kramer. Kramer's alleged conduct as a member of the alleged conspiracy is sufficient to sustain a claim of violation of 10 V.I.C. § 3.

### B. Title VII and § 1981

Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

11

42 U.S.C. § 2000e-2.

The Third Circuit has held, in line with several of its sister circuits, that Title VII does not provide for the liability of individual employees. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (collecting cases.) *See also Marrero v. Brin*, 2009 WL 3181933, at *2 (D.V.I. Sept. 28, 2009) (Congress did not intend to hold individual employees liable under Title VII) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 184 (3d Cir.1997)). Thus, the cause of action alleged against Kramer pursuant to Title VII fails as a matter of law and must be dismissed.

Section 1981 provides in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and *the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship*.

The rights protected by this section are protected against impairment *by nongovernmental discrimination* and impairment under color of State law.

42 U.S.C. § 1981 (emphasis added).

Unlike a Title VII claim, individual liability under § 1981 is not precluded. Such liability is found "when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable." *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) (quoting *Al- Khazraji v. Saint Francis Coll.*, 784 F.2d

505, 518 (3d Cir.1986). "Personal liability under section 1981 must be predicated on the actor's personal involvement." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotations and citation omitted). Thus, "[i]n order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Id.* *See also Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (same).

The allegation that Kramer transferred Berrios to the Turnaround Department in order to terminate his position at Jacobs sufficiently alleges the "personal involvement" of Kramer and an "affirmative link" to the discriminatory action. *Patterson*, 375 F.3d at 229. Therefore, the section 1981 claim will not be dismissed.

Defendant argues that the statute of limitations bars Plaintiffs' § 1981 claim because the conduct attributed to Kramer occurred in 2000 and 2001, more than four years[3] before Plaintiffs filed the First Amended Complaint. (Def. Reply at 5.) Defendant's argument must be rejected. Plaintiffs filed the original complaint in this matter in the Virgin Islands Superior Court on September 16, 2002. (Compl.; Def. Mem. of Law at 1; Pl. Opp. at 22.) In the Complaint, Plaintiffs made the same allegation concerning Kramer's involvement in the transfer of Berrios, (Compl. ¶ 51), and also made the same allegations concerning the discriminatory scheme involving all named Defendants. Pursuant to Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c). The actions underlying the § 1981 claim

---

[3] The Court agrees with Defendant that the four-year statute of limitations set forth in the catchall provision of 28 U.S.C. § 1658 is applicable to Plaintiffs' § 1981 claim. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

in the First Amended Complaint are those outlined in the Complaint brought in 2002, within the four-year statutory period. Thus, the claim is not time-barred.

### C. Punitive Damages

As phrased, Count VII is a prayer for a remedy, not a cause of action and as such, must be dismissed. *McDonald v. Davis*, 2009 U.S. Dist. LEXIS 17309, at *55-56 (D.V.I. 2009) (citing *Urgent v. Hovensa, LLC*, 2008 U.S. Dist. LEXIS 77455, at *31 (D.V.I. Oct. 2, 2008)). However, the Court's ruling is without prejudice to Plaintiff's request for punitive damages at the appropriate stage of these proceedings. *Id.* at 56.

### D. Wrongful Discharge and Intentional or Negligent Infliction of Emotional Distress

While the Plaintiffs and Defendant Kramer dispute whether Plaintiffs have sufficiently alleged facts in support of a claim of wrongful discharge or intentional or negligent infliction of emotional distress, the Court finds that these issues have not been raised in the Amended Complaint and thus the Court need not consider them here. With respect to Plaintiffs' claim of wrongful discharge, such claim is asserted only against HOVENSA and Jacobs. (First Amend. Compl. ¶¶ 127-130.) With regard to the tort of intentional or negligent infliction of emotional distress, Plaintiffs have not alleged these causes of action in their Amended Complaint, nor is there any factual basis for reading this claim into the Amended Complaint.

## IV. Conclusion

Defendant Kramer's motion to dismiss will be granted in part and denied in part. Plaintiffs have sufficiently alleged discriminatory conduct to support a cause of action pursuant to Title 10 of the Virgin Islands Code and 42 U.S.C. § 1981. Additionally, a private cause of action is available under either statute and thus Defendant's motion to dismiss those claims will be

denied. However, Plaintiffs' claims of discriminatory conduct pursuant to Title 24 of the Virgin Islands Code or Title VII fail as a matter of law because there is no private cause of action pursuant to the relevant subsection of Title 24, and a Title VII allegation cannot be brought against an individual employee. The Court will not rule on Plaintiffs' claim of wrongful discharge, since this claim was not asserted against Defendant Kramer. Similarly, there is no allegation of intentional or negligent infliction of emotional distress in the amended complaint and thus it is also unnecessary to rule on such a claim. The claim for punitive damages will be dismissed because it merely seeks a remedy and fails to state a cause of action. An appropriate Order will be entered in conjunction with this Opinion.

**ENTER:**

Dated: June 3, 2010 _____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE