IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| EDGAR BERRIOS, RAYMOND ALLEYNE, MALCOLM MACCOW, and VIRGINIE GEORGE, <br><br>Plaintiffs,<br>v.<br><br>HOVIC, HOVENSA, L.L.C., JOHN PAULUS, DARYL KRAMER, TODD REIDLINGER, JACOBS INDUSTRIAL MAINTENANCE COMPANY, L.L.C., WYATT V.I. INC., JACOBS CONSTRUCTORS, INC., JACOBS ENGINEERING GROUP, L.L.C. and WYATT FIELD SERVICE COMPANY,<br><br>Defendants. | CIV. NO.: 05-CV-192 |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER is before the Court on the Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration ("Motion to Compel") and the Renewed Motion to Stay Proceedings Pending Arbitration ("Renewed Motion") filed by Defendant Wyatt VI, Inc. ("WVI"), Wyatt Field Service Company ("WFS") and Todd Reidlinger (collectively "Wyatt Defendants"). Defendant HOVENSA has filed a Notice of Joinder in Defendant Wyatt's motion to compel arbitration. Plaintiffs oppose arbitration.

### I. Background

Plaintiffs originally filed suit against Wyatt and the other defendants in this matter in the Virgin Islands Superior Court (then known as the Territorial Court) on September 16, 2002 alleging race-based discrimination as well as claims of wrongful discharge, misrepresentation

1

and intentional infliction of emotional distress in connection with their employment at the HOVENSA refinery. (Compl. ¶¶ 118-136.) The action was subsequently removed to the District Court of the Virgin Islands by Defendant Wyatt based on federal question jurisdiction on October 10, 2002. (Civil No. 2002-148.) On October 10, 2002, Wyatt also filed a motion to compel arbitration and to stay proceedings pending arbitration. (Civil No. 2002-148, Dock. # 2.) Before any ruling was issued on Wyatt's motion to compel, the Court remanded the action back to the Superior Court on April 22, 2003.

Following remand, the complaint was amended to assert federal claims and then removed once again to this Court. (Civil No. 2005-192.) In the Amended Complaint currently before the Court, Plaintiffs allege that (1) the Defendants discriminated against Plaintiffs in violation of the Virgin Islands Civil Rights Act ("VICRA") (Count I); (2) HOVENSA and Jacobs acted wrongfully in discharging Plaintiffs (Count II); (3) the Defendants violated Title VII and 42 U.S.C. § 1981 (Count IV); and (4) Defendants engaged in conduct sufficiently outrageous to warrant an award of punitive damages to Plaintiffs (Count VII). (First Amend. Compl. ¶¶ 123-145.)

Defendant Wyatt filed the Renewed Motion on May 12, 2006. Defendant HOVENSA filed a notice of joinder in the Motion to Compel on June 21, 2006. Plaintiffs oppose Wyatt's Renewed Motion as well as HOVENSA's joinder in the Motion to Renew.

## II. Discussion

Defendant Wyatt contends that, pursuant to a dispute resolution agreement ("DRA") between Maccow and Wyatt, the claims brought by Maccow against Wyatt are to be arbitrated. (Def. Mem. of Law in Supp. of Renewed Mot. at 3-4. (citing Def. Ex. A, DRA.)) Wyatt also contends that the entire case as to the other Plaintiffs should also be stayed until arbitration has taken

place. (*Id*. at 4-5.) Plaintiff asserts that the arbitration agreement is unenforceable because (1) Plaintiff's objection to the DRA constituted a counter-offer; (2) it was signed under duress; and (3) its terms are unconscionable. (*Id*. at ¶¶ 7-16.)

### A. Motion to Compel Arbitration and Stay Proceedings: Standard of Review

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When the court is satisfied that an issue before the court is one referable to arbitration pursuant to an agreement between the parties, the Court shall, upon application of one of the parties, compel arbitration and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding." 9 U.S.C. §§ 3-4.

Before the matter is stayed and the parties compelled to arbitrate, the court must determine (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the dispute in question falls within the scope of that valid agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 527 (3d Cir. 2009) (citations omitted). To determine whether a valid agreement to arbitrate exists, the Court applies ordinary state-law principles of contract. *Id*. at 532 (citing First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995)).

A summary judgment standard is applicable when the existence of an arbitration agreement is challenged. *Kirleis v. Dickie, McCamey & Chilcote, P.C*., 560 F.3d 156, 159 (3d Cir. 2009) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd*., 636 F.2d 51, 54 n.9 (3d Cir. 1980)). In order to compel arbitration, the Court must determine that there is no genuine issue of fact concerning the formation of the agreement to arbitrate, according the party opposing

arbitration the benefit of all reasonable doubts and inferences that may arise. *Id.* (citations omitted). A party opposing arbitration may invoke generally applicable contract defenses such as fraud, duress, or unconscionability. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). *See also Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citations omitted).

### 1. Validity of the Arbitration Agreement

At the outset, the Court notes that Plaintiff disputed the DRA initially presented by Wyatt in its Renewed Motion to Compel. However, Wyatt has produced a second DRA in its Reply which corresponds to the DRA described in Maccow's Affidavit.[1] The Court will therefore consider that DRA, dated January 6, 2002, for purposes of this motion. The January 6, 2002 DRA provides provides in pertinent part that

> Both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms and conditions of my employment, and any claims arising from or relating to the employment relationship exclusively by final and binding arbitration . . . . By way of example only, some of the types of claims subject to final and binding arbitration include the following: for an alleged wrongful decision not to hire me; claims for discrimination or harassment on the basis of age, race, religion, disability, national origin or other unlawful basis or for any violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 100 et seq. or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.; for violations of the Fair Credit Reporting Act; for tort claims such as defamation or the intentional infliction of emotional distress; for breach of any employment agreement or promises; and any claims for personal injury or property damage. This agreement extends to disputes with or claims against Wyatt V.I. Inc., HOVENSA, L.L.C., and any of their related or affiliated companies, entities, or individuals (as intended third party beneficiaries).

---

[1] Plaintiff alleges in his Opposition that the DRA submitted by Wyatt in its Renewed Motion to Compel as Exhibit A is not the actual DRA signed by Maccow. (Pl. Opp. to Mot. to Renew at 1.) Maccow submitted an affidavit stating that he signed a DRA on January 6, 2002 in which he wrote the sentence "I am signing this dispute resolution agreement due to the fact that I am in need of a job." (Pl. Opp. Ex. 1.) In its Reply, Wyatt contends that there were two DRAs signed by Plaintiff, one signed and dated by Maccow on January 5, 2002 and one signed and dated by Maccow on January 6, 2002, in which Maccow wrote the statement that he is signing the DRA because he needs a job. (Def. Reply Def. Ex. 1.)

(Def. Reply in Supp. of Mot. to Renew, Ex. 1.)

The DRA is signed and dated by Malcolm Maccow. At the bottom of the page, Maccow added the sentence "I am signing this dispute resolution agreement due to the fact that I am in need of a job."

The dispute at issue in the Amended Complaint between Plaintiff and Wyatt revolves around the terms and conditions of employment, claims that correspond to the examples of arbitrable issues cited in the DRA. Maccow does not deny that such claims are arbitrable pursuant to the terms of the DRA but instead challenges the validity of the DRA on several bases, which are considered below.

### a. Counter-Offer

Maccow alleges that the statement he wrote at the bottom of the January 6, 2002 DRA constitutes a counter-offer and thus his signature on that document does not constitute an agreement to its terms. (Pl. Opp. at 8.)[2]

An essential prerequisite for the creation of a valid contract is that the parties mutually assent to the terms and conditions of the agreement. *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*, 761 F. Supp. 1231, 1233 (D.V.I. 1991) (citing *Ventura v. Pearson*, 17 V.I. 107, 111 n. 2 (Terr. Ct. 1987).) "Where there is no mutual assent, or no meeting of the minds, there is no contract." *Forbes, by and through Forbes v. Clooney*, 31 V.I. 28, 33, 1994 WL 737172, at *3 (Terr. Ct. 1994) (citations omitted). "The manifestation of mutual assent almost invariably takes the form of an offer by one party which is accepted by the other party." *Sharp Properties, Inc.*, 761 F. Supp. at 1233 (citing *Ventura*, 17 V.I. at 111 (citing Restatement (Second) of Contracts § 22)). "A reply to an offer which purports to accept it but is conditional on the offeror's assent to

---

[2] Plaintiff states that "[p]ursuant to § 59 of the Restatement (Second) of Contracts, Plaintiff's annotation at that bottom of the DRA was a qualified acceptance that amounted to a counteroffer, not a contract." (Pl. Opp. at 8.)

terms additional to or different from those offered is not an acceptance but is a counter-offer." *Carlton-Michaels Corp. v. PAX Holdings, Inc.*, 2001 WL 237354, at *6 (D.V.I. Jan. 16, 2001) (citing Restatement 2d of Contracts § 59.)

Maccow's statement does not indicate that his acceptance is conditional on Wyatt's assent to "terms additional to or different from those offered" by Wyatt. *Id.* In fact, Maccow does not propose any additional or different terms at all. Instead, Maccow's statement merely indicates a reason for him to sign the DRA. Furthermore, Maccow's signature at the bottom of the January 6, 2002 DRA serves as proof that he *has* assented to the terms of the agreement. Maccow's argument that he made a counter-offer when he crossed out the arbitration provision of the employment agreement is also without merit. The DRA, signed on January 6, 2002, constituted an agreement to arbitrate any disputes relating to employment, including those that might arise prior to an offer of employment. Maccow was presented with the employment agreement after he signed the DRA. (Pl. Opp. Ex. 5, Employment Agreement dated January 15, 2002.) Thus, the DRA was already in effect and the employment agreement was a separate agreement that had no effect on the DRA. Furthermore, as Maccow notes, Wyatt rescinded its offer of employment when Maccow refused to agree to all the terms of the employment agreement. The employment agreement is therefore of no consequence with regard to the issue of a counter-offer to the DRA.

### b. Duress

Plaintiff also argues that the DRA is invalid because it was signed under duress.

"Generally, a contract signed under duress is voidable at the option of the party deemed the "victim" of the transaction. *Ward v. Reid*, 46 V.I. 70, 77, 2004 WL 2792814, at *4 (V.I. Super. Ct. 2004) (citing Restatement 2d of Contracts § 175 (1981)). Duress occurs where there

is physical compulsion or wrongful threats. *Id.* (citing Rest. 2d Contr. §§ 174-175); *Lempert v. Singer*, 766 F. Supp. 1356, 1361 (D.V.I. 1991)). "In order to make out a case for duress by improper threat, the party asserting the defense must show both an improper threat and no reasonable alternative to making the contract." *Id.* (citing Rest. 2d Contr. § 175). *See also Tea Garden of Rattan, Inc. v. U.S*, 2008 WL 4966899, at *3 (D.V.I. Nov. 18, 2008) ( "If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim."); *In re Nickels Midway Pier, LLC*, 2009 WL 3303365, at *3 (3d Cir. 2009) (there may be economic duress if a party assents to an improper demand under circumstances which deprives the victim of his unfettered will) (citations omitted)).

Maccow has not shown any improper threat on the part of Wyatt or that the only reasonable alternative he had was to sign the DRA. *Reid*, 2004 WL 2792814, at *4. Maccow could have rejected the agreement and sought employment elsewhere. *See, e.g., Lempert v. Singer*, 766 F. Supp. 1356, 1362 (D.V.I. 1991) ("The transaction of business often requires difficult choices, and driving a hard bargain is not sufficient to constitute duress") (citations omitted); *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 178, 459 A.2d 1163, 1176 (N.J. 1983) ("Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion . . .") (citing 13 S. Williston, Contracts, § 1617 at 708) (footnotes omitted)). The argument that the DRA is voidable due to duress must be rejected.

### c. Illusory Promise

In opposing the arbitration agreement, Plaintiff also contends that the DRA is unenforceable because Wyatt's promise to arbitrate is illusory. (Pl. Opp. at 11.) Plaintiff does

7

not clearly spell out the basis for this allegation but seems to suggest that the arbitration agreement is unenforceable because the Defendant had the right to alter the arbitration agreement at any time.

Plaintiff is correct that where a promise is illusory, such a promise does not constitute consideration. Restatement (Second) of Contracts § 77, cmt. a. A promise is illusory where its "terms make performance entirely optional with the "promisor."" *Id*. *See also Plaskett v. Bechtel Intern., Inc*., 243 F. Supp. 2d 334, 339 (D.V.I. 2003) (citing Restatement 2d of Contracts § 77). However, Plaintiff has failed to identify any term in the DRA that make Wyatt's performance entirely optional or gives Wyatt the right to modify the DRA unilaterally. *Plaskett*, 243 F. Supp. 2d at 339. Therefore, the argument that Wyatt's promise is illusory must also be rejected.

### d. Lack of consideration

Plaintiff also seeks to invalidate the DRA on the basis that he received no extra consideration for advantages bestowed on Wyatt, citing the "relinquishment of rights and added expenses" associated with arbitration.

"Consideration is required for an enforceable contract and its absence may be a ground for revocation." *Richardson v. Virgin Islands Port Authority*, 2010 WL 1641154, at *15 (D.V.I. Apr. 21, 2010) (citing *Shervington v. Gallows Bay Hardware, Inc*., 2009 WL 1650414, at *1 (D.V.I. June 11, 2009). The Third Circuit has expressly held that "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir.2002). In this case, the DRA requires both Wyatt and Maccow to be bound by arbitration:

> Both Wyatt and I [Maccow] agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms and

conditions of my employment, and any claims arising from or relating to the employment relationship exclusively by final and binding arbitration

(Def. Ex. 1)

The Court concludes that adequate consideration exists for the DRA and it is not unenforceable on that basis.

### e. Unconscionability

Plaintiff argues that the DRA is both procedurally and substantively unconscionable. Maccow asserts that it is a procedurally unconscionable contract of adhesion because it was offered on a take it or leave it basis. (Pl. Opp. at 14.) Plaintiff further argues that it is substantively unconscionable because it is unreasonably favorable to Wyatt, the drafter and cites the following facts in support of that argument: (1) Plaintiff relinquishes his right to a jury trial against Wyatt and "countless other alleged third-party beneficiaries"; (2) Plaintiff is required to pay half the cost of the arbitration fees and expenses; (3) there is no mutual obligation imposed on Wyatt because Wyatt will not bring any of the enumerated claims in the DRA. (Pl. Opp. at 15-16.)[3]

Under the local law of the Virgin Islands, a court may refuse to enforce a contract or term of a contract that is unconscionable at the time the contract is made. *Edwards v. Hovensa*, 497 F.3d 355, 362 (3d Cir. 2007) (citing Restatement (Second) of Contracts § 208). Unconscionability encompasses both procedural and substantive elements and both must be proven to revoke a contract on that basis. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). A contract that is prepared by the party with greater bargaining power and

---

[3] Plaintiff also argues that he is entitled to additional discovery to show that the DRA was motivated by a discriminatory purpose. (Pl. Opp. at 17-18.) However, a review of the docket indicates that, after much litigation on the issue of discovery, Plaintiff was given a deadline by order of the Magistrate Judge to conduct any discovery on the issue of the discriminatory use of the DRA by Wyatt within twenty-days. (Order, July 30, 2008, dock. #227.) However, Plaintiff has not provided any information to the Court subsequent to that Order to show that the DRA was motivated by a discriminatory purpose.

presented to the other party on a take-it-or-leave-it basis is known as a contract of adhesion and is generally found to be procedurally unconscionable. *Id*. (citations omitted.) However, "an adhesion contract is not necessarily unenforceable. The party challenging the contract therefore must also establish substantive unconscionability." *Id*. (citations omitted.) Substantive unconscionability is found where there are "terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id*. (citing Rest. 2d of Contracts § 208 cmt. d). "[T]he burden of proving such unconscionability lies with the party challenging the contract provision." *Parilla v. IAP Worldwide Services, VI, Inc*., 368 F.3d 269, 277 (3d Cir. 2004) (citations omitted.) "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Id*. at 276 (quoting Rest. 2d of Contracts § 208).

The Court finds that Plaintiff has not satisfied the burden of showing that the DRA is both procedurally and substantively unconscionable. While the contract may be deemed one of adhesion, that alone does not suffice to make it unenforceable. *Alexander*, 341 F.3d at 265. The Plaintiff must show that the agreement is also substantively unconscionable . *Id.*

The waiver of Maccow's right to jury trial does not render the DRA unconscionable. *Harrington v. Atlantic Sounding Co., Inc*., 602 F.3d 113, 126 (2d Cir. 2010) (rejecting the argument that the arbitration agreement was substantively unconscionable because it denied plaintiff a trial by jury because courts may not "rely on the uniqueness of an agreement to arbitrate . . . which necessarily waives jury trial . . . as a basis for a state-law holding that enforcement would be unconscionable") (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987)). In fact, "[i]t is well-settled that waivers of jury trial are fully enforceable under the FAA." *Id*.

(citing *Gilmer v. Interstate/Johnson lane Corp.*, 500 U.S. 20, 26 (1991); *Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 480-81 (1989); *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

With regard to the inclusion of a third-party beneficiary in the DRA, this Court has already concluded that such a provision fails to render the DRA unconscionable. *See Pemberton v. Hovensa, L.L.C.*, 2009 WL 1138086, at *5 (D.V.I. Apr. 24, 2009) (citing *Edwards v. Hovensa, LLC*, 497 F.3d 355, 362 (3d Cir.2007)); *Reed v. Turner St. Croix Maintenance, Inc.*, WL 1074383, at *6-7 (D.V.I. Mar. 28, 2005) (citing Rest. 2d of Contracts § 302)). Likewise, even if Plaintiff is correct that Wyatt is not mutually obligated under the agreement to arbitrate disputes with Plaintiff, that proviso would also fail to invalidate the DRA. *Edwards*, 497 F.2d at 364 ("where an arbitration provision requires only one side to submit its claims . . . to arbitration, but does not alter or limit the rights and remedies available to that party in the arbitral forum, it cannot be said that the parties' agreement is substantively unconscionable . . . .").

Plaintiff also contends that the DRA is unconscionable because it requires Plaintiff to pay half the cost of the arbitration fees and expenses. (Pl. Opp. at 15.) The following terms of the DRA govern the expenses related to arbitration:

> The National Rules will govern the allocation of costs between the parties unless otherwise agreed. The parties agree that the party initiating the arbitration must pay in advance a filing fee of $100. The remaining expenses of the arbitration (including AAA's administrative fees, the arbitrator's compensation, and any required deposits) shall be divided equally between the parties during the arbitration and are subject to reapportionment by the arbitrator as part of the written award and in accordance with applicable law. Upon a written request to the Arbitrator demonstrating financial hardship or financial inability to pursue the claim, Wyatt will be responsible for the remaining expenses and costs of arbitration.

(Def. Reply, Def. Ex. 1) (emphasis added.)

An arbitration agreement may be invalidated where the allocation of costs pursuant to a

DRA "could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 213-14 (3d Cir. 2003) (citing *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). "A party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Id*. at 217 (citing *Green Tree*, 531 U.S. at 92). To meet this burden, the party opposing arbitration must present evidence that (1) shows the projected fees that would apply to his or her specific arbitrations; and (2) shows the party's inability to pay those fees. *Parilla*, 368 F.3d at 283-85 (3d Cir.2004) (applied to cost-shifting provision under Virgin Islands doctrine of unconscionability); *Alexander*, 341 F.3d 256, 268-69 (3d Cir.2003) (same); *Spinetti*, 324 F.3d at 216-17 (3d Cir.2003) (applied to cost-splitting fees); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002) (same) .

First of all, the Court notes that the DRA also includes a provision whereby Plaintiff would be permitted to avoid paying expenses by demonstrating financial inability to pay. As this Court has previously held, a plaintiff cannot satisfy his burden of proving the likelihood of incurring prohibitive costs where the terms of a DRA include such a provision. *Lloyd v. Hovensa LLC.*, 243 F. Supp. 2d 346, 350 (D.V.I. 2003), *rev'd on other grounds*, 369 F.3d 263 (3d Cir. 2004). In any case, Maccow has also failed to show that the costs of arbitration are prohibitive because he has provided no estimate of the projected fees applicable to arbitration of his claims, nor his inability to pay.[4]

---

[4]The Court is aware that limited discovery on the issue of arbitration costs has been permitted where a plaintiff challenges an arbitration provision as unconscionably cost-prohibitive. *See, e.g., Blair*, 283 F.3d at 610; *Parilla*, 368 F.3d at 284. However, in those cases the Plaintiff had provided some basis to move forward with discovery, such as filing an affidavit of financial status or estimating costs of arbitration or sought discovery. For example, in *Blair* the plaintiff had provided an affidavit of her limited financial capacity and evidence that the AAA would preside over the arbitration. *Blair*, 283 F.3d at 610. In *Parilla*, the plaintiff had sought discovery into the costs of arbitration but was denied such when the district court failed to entertain her argument. *Parilla*, 384 F.3d at 284. In this case, Plaintiff has not provided any information about his financial condition, nor has he even sought discovery on the issue. In fact, Plaintiff has not argued that he is unable to afford to vindicate his rights through arbitration but

### 2. Third party beneficiaries: HOVENSA and John Paulus

Defendant HOVENSA filed a Notice of Joinder in Defendant Wyatt's Motion to Compel Arbitration on June 21, 2006. Plaintiff opposes the joinder on the grounds that Plaintiff did not sign an agreement to arbitrate with HOVENSA nor any purportedly intended third-party beneficiary. (Pl. Resp. to Notice of Joinder in Def. Wyatt's Mot. to Compel Arbit.)

The terms of the DRA provide that "[t]his agreement extends to disputes with or claims against Wyatt V.I. Inc., *HOVENSA, L.L.C.*, and any of their *related* or *affiliated* companies, entities, or *individuals* (as *intended third party beneficiaries*)." (Def. Reply Ex. 1) (emphasis added). "An intended beneficiary is a party who acquires a right by virtue of a promise between two contracting parties." *Reed*, 2005 WL 1074383, at *6 (citing Rest. 2d of Contracts § 302 & cmt. a (1981)). Wyatt and Maccow as parties to the DRA had the power to create an enforceable right in a third party. *Id*. (citing Rest. 2d of Contracts § 304, cmt. b). The court will enforce an arbitration agreement as to a third party when the agreement shows "an express and unequivocal intent that the plaintiffs would arbitrate their claims against [the defendant] and when "both parties to the contract express an intention to benefit the third party in the contract itself." *In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) (citations omitted).

The Court has already concluded that Maccow agreed to the terms of the DRA. Moreover, the terms of the DRA establish that Wyatt and Maccow intended HOVENSA to be a third party beneficiary as well as individuals affiliated with HOVENSA. John Paulus has been identified by Plaintiff as a management employee of HOVENSA (First Amend. Compl. ¶ 8), and as such, is an "individual affiliated with HOVENSA," and a third party beneficiary pursuant to the DRA. *See, e.g., Parilla*, 368 F.3d at 275.

---

has merely cited the cost-splitting provision as evidence of unconscionability.

### 3. Applicability of stay to the entire proceedings

Wyatt asks the Court to stay the proceedings, pending the outcome of the arbitration between Wyatt and Maccow, relying on 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA"), which provides that

> If any suit or proceeding be brought in any of the courts of the United States upon **any issue referable to arbitration** under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added.)

Reading the term "issue" in section 3 broadly, Wyatt argues that because Maccow's claims are arbitrable, the entire proceedings must be stayed.

As the Court has already concluded, Maccow's claims fall within the scope of the arbitration agreement. However, Wyatt incorrectly asserts that the entire case should be stayed. The Third Circuit considered and rejected the same argument in *Mendez v. Puerto Rican Intern. Companies, Inc.*, 553 F.3d 709, 715 (3d Cir. 2009) when it held that "in order for a party to be the subject of a mandatory stay pending arbitration, that party must have committed itself to arbitrate one or more issues in suit." *Id.* The *Mendez* court stated that "reading [section 3] in the context of the FAA as a whole" the purpose of section 3 was, in essence, to "guarantee[] the enforcement of private contractual arrangements." *Id.* at 711. Therefore, *Mendez* declined to interfere with the rights of a litigant who had not entered into an arbitration agreement by imposing a stay. *Id*. The Third Circuit found that the term "issue" in section 3 served the purpose of allowing litigation to be stayed in cases where a litigant had raised both arbitrable and non-arbitrable issues, but concluded that section 3 had "no application to "issues" in cases

between different parties." *Id*. at 713.  Thus, the Court declines to stay the matter as to any plaintiff other than Maccow.

### III. Conclusion

The Court concludes that Wyatt and Maccow entered into a valid arbitration agreement and that the claims brought in this matter fall within the scope of arbitrable issues pursuant to the terms of the agreement.  The Court further finds that HOVENSA and John Paulus are third-party beneficiaries of the arbitration agreement and that the claims against those beneficiaries likewise fall within the scope of the arbitration agreement.  Based on these findings, the Court will compel arbitration of Maccow's claims against Wyatt, HOVENSA and Paulus and stay the action only with respect to Maccow's claims against those defendants.  However, because Plaintiffs Berrios, Alleyne and George have not entered into such an agreement, the Court declines to stay the action of the claims brought by those plaintiffs against any of the defendants named in this action.  An appropriate Order will accompany this Memorandum Opinion.

**ENTER:**

Dated: June 8, 2010     _____/s/_____
                        HONORABLE RAYMOND L. FINCH
                        SENIOR U.S. DISTRICT JUDGE