**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **EDGAR BERRIOS, RAYMOND ALLEYNE,** | ) | |
| **MALCOLM MACCOW**, and **VIRGINIE GEORGE,** | ) | |
| | ) | |
| Plaintiffs, | ) | **CIV. NO.: 05-CV-192-F** |
| v. | ) | |
| | ) | |
| **HOVIC, HOVENSA, L.L.C.,  JOHN PAULUS**, | ) | |
| **DARYL KRAMER, TODD REIDLINGER, JACOBS** | ) | |
| **INDUSTRIAL MAINTENANCE COMPANY, L.L.C.,** | ) | |
| **WYATT V.I. INC., JACOBS CONSTRUCTORS, INC**.,) | |
| **JACOBS ENGINEERING GROUP, L.L.C.** and | ) | |
| **WYATT FIELD SERVICE COMPANY** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**MEMORANDUM OPINION**</u>

Finch, Senior Judge

THIS MATTER is before the Court on Defendant John Paulus' ("Defendant" or "Paulus") Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"). Defendant contends that Plaintiffs Edgar Berrios, Raymond Alleyne, Malcom Maccow, and Virginie George (collectively "Plaintiffs") have failed to state a claim for relief for discrimination, wrongful discharge, or intentional or negligent infliction of emotional distress against Paulus.  Plaintiffs oppose the Motion to Dismiss.

**I.        Procedural and Factual Background**

This action against Paulus and the other defendants began in the Virgin Islands Superior Court (then known as the Territorial Court) on September 16, 2002.  After removal to this Court on December 19, 2005, the Amended Complaint set forth the following allegations (1) the

Defendants discriminated against Plaintiffs in violation of the Virgin Islands Civil Rights Act ("VICRA") (Count I); (2) HOVENSA and Jacobs acted wrongfully in discharging Plaintiffs (Count II); (3) HOVENSA misrepresented its employment practices to Plaintiffs (count IV); (4) the Defendants engaged in intentional or negligent infliction of emotional distress (Count V); (5) the Defendants violated Title VII and 42 U.S.C. § 1981 (Count VI); and (6) Defendants engaged in conduct sufficiently outrageous to warrant an award of punitive damages to Plaintiffs (Count VII). (FAC ¶¶ 123-145.) Defendant Paulus filed the instant Motion to Dismiss on March 31, 2006. Plaintiff eventually filed an Opposition on April 19, 2007 (Dock. No. 180.)[1] On November 27, 2007, Defendant filed his Reply to Plaintiff's Opposition.

In support of the Amended Complaint, Plaintiffs allege the following pertinent facts: All Plaintiffs are citizens of St. Croix, in the United States Virgin Islands. (FAC ¶¶ 2-5.) All are West Indian males. (*Id.*) Edgar Berrios ("Berrios") is Hispanic, and Raymond Alleyne ("Alleyne"), Virginie George ("George") and Malcom Maccow ("Maccow") are black. (*Id.*) HOVENSA, as the owner and operator of the Hess refinery on St. Croix, hires various contractors to perform work in the refinery. (*Id.* ¶ 18.) Defendant Jacobs and Defendant Wyatt were contractors who worked for HOVENSA. [2] (*Id.* ¶¶ 9, 13 18, 23.) Defendant Paulus is a Virgin Islands resident and management employee of HOVENSA. (*Id.* ¶ 8.) Plaintiffs allege that HOVENSA "aided and or required and or acquiesced with Jacobs and Wyatt paying predominately white persons hired stateside higher salaries and benefits and receiving higher

---

[1] Subsequent to Defendant's filing of the motion to dismiss, Defendant and Plaintiffs engaged in a prolonged dispute over Plaintiffs' right to file an opposition in excess of the twenty (20) page limit, and also entered into several stipulations to extend the response time to matters pertaining to this motion to dismiss.

[2] According to Plaintiff's amended complaint, Jacobs Industrial Maintenance Company, LLC is a joint venture between Industrial Management Corporation and Jacobs Constructors. (FAC ¶ 9.) Jacobs Engineering Group LLC is another Jacobs entity referred herein as the Jacobs Defendants. (*Id.* ¶¶ 11-12.) Wyatt Field Service is the parent company of Wyatt VI, Inc. (*Id.* ¶13.) All Wyatt entities are referred to in Plaintiffs' amended complaint as Wyatt. (*Id.* ¶ 15.)

positions then [sic] Virgin Islanders who were predominately West Indians, but who had the same or similar qualifications and were performing the same or similar work." (*Id*. ¶ 24.) When work being done by Jacobs was to be transferred to Wyatt, the companies allegedly conspired to transfer a disproportionate number of local West Indian employees to the Turnaround Department and to transfer white employees out of that department. (*Id*. ¶ 33.) Therefore when the inevitable layoffs occurred, more locals would be laid off and more statesiders would retain their employment. (*Id*.)

Plaintiffs have also made specific allegations regarding the conduct of Defendant Paulus. Some background information is included to provide a context for the allegations. Berrios had been employed at the HOVENSA refinery since 1992 as a Cost Engineer for IMC until he was transferred to the same position at Jacobs/IMC in 1999. (*Id*. ¶¶ 34, 36, 37.) Berrios received less pay and a lower benefit package in his new position compared to stateside employees. (*Id*. ¶¶ 37-42.) In 2001, HOVENSA and Jacobs transferred Berrios to the Turnaround Department, allegedly in anticipation of terminating him for reduction in force. (*Id*. ¶ 48.) Defendant Paulus was involved in Berrios' transfer to the Turnaround Department. (*Id*. ¶ 52.) On December 31, 2001, Berrios was terminated by Jacobs and Hess. (*Id*. ¶ 50.) White stateside engineers who Berrios had trained and who had been hired after Berrios were retained. (*Id*.)

Plaintiff Alleyne worked for various contractors at Hess for seven years, was hired by IMC as a Pipefitter in 1989, and was subsequently promoted to Pipefitter Foreman in 1990. (*Id*. ¶ 60.) During Alleyne's tenure at IMC and Jacobs/IMC, he was passed over for supervisory positions that were given to white statesiders. (*Id*. ¶¶ 61-63.) Prior to his promotion, Alleyne did the same work as a Piping Supervisor but did not receive the pay or benefits corresponding to that position. (*Id*. ¶ 63.) Alleyne was transferred to the Turnaround Department by Jacobs and

Hess. (*Id.* ¶ 68.) In 2001, HOVENSA decided to transfer Alleyne's position to Wyatt. (*Id.* ¶ 70.) HOVENSA instructed Alleyne to apply directly with Wyatt in order to continue working in the HOVENSA fabricating shop, and Alleyne did so. (*Id.* ¶¶ 71-72.) Alleyne alleges that Wyatt told him his old supervisory job was not available to local hires, and that the only position he could apply for was a General Foreman position. (*Id.* ¶ 72.) Alleyne complained that he was being discriminated against and subsequently was not contacted or hired by Wyatt. (*Id.* ¶¶ 74-75.) Plaintiffs claim that Paulus was "personally involved in the discriminatory actions against Alleyne." (*Id.* ¶ 79.)

Plaintiff George alleges that after he filed EEOC complaints and lawsuits against HOVENSA and Jacobs/IMC, the Defendants took retaliatory actions against him, suspending him from employment, giving him unfair negative evaluations and unfavorable job assignments, hours of work and pay. (*Id.* ¶¶ 80-83.) George was placed in the Turnaround Department and informed that his position would be eliminated as a result of his Turnaround classification on November 2, 2001. (*Id.* ¶¶ 85-86.) George alleges that HOVENSA controlled every aspect of his employment at Jacobs, including his pay, benefits, promotions, and termination. (*Id.* ¶ 90.) There is no direct reference to Defendant Paulus with regard to George.

Plaintiff Maccow began working at the Hess refinery in 1991 as a Process C Operator. (*Id.* ¶ 102.) In 2000, Maccow went to work for Jacobs/IMC as a B Boilermaker. (*Id.* ¶ 106.) In April 2001, Maccow was promoted to Boilermaker Foreman by Jacobs but was not given pay or benefits corresponding to that position. (*Id.* ¶¶ 107-108.) Maccow was later given a pay increase, but still received less pay and fewer benefits than predominantly white statesiders doing the same work. (*Id.* ¶ 109.) Maccow learned that his job would be eliminated from Jacobs because he was in the Turnaround Deparment, and HOVENSA had ordered that his position be

moved to Wyatt and filled with a white statesider. (*Id.* ¶¶ 112-114.) Maccow attempted to apply for a foreman position as a boilermaker with Wyatt but was told that these positions would be offered to statesiders and not to West Indian Virgin Islanders. (*Id.* ¶ 115.) There is no specific reference to Paulus with regard to the alleged discriminatory treatment of Maccow.

## II.      Standard of Review

When reviewing a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not provide detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff cannot rely on mere " labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* (citations omitted). Rather, a plaintiff must cite enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. To establish facial plausibility, the plaintiff must plead factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 1950. (internal quotations and citation omitted).

## III.      Discussion

### A.  Virgin Islands Civil Rights Act

The Amended Complaint alleges that "[t]he Defendants have discriminated against the Plaintiffs in their hiring, pay, benefits, promotions, job duties, job responsibilities, evaluations,

and termination as a result of race, color, national origin" and that such actions constitute a violation of the Virgin Islands Civil Rights Acts of the Virgin Islands ("VICRA") found in Titles 10 and 24 of the Virgin Islands Code. (FAC ¶¶ 124-125.) Defendant argues that there is no private cause of action pursuant to Chapter 17 (Title 24) or Chapter 5 (Title 10), and that Plaintiffs have failed to allege facts sufficient to state a claim for discrimination under the statute. (Motion to Dismiss FAC ("MTD") at 6.) Plaintiffs counter that, notwithstanding the limited references to the conduct of Paulus, he remains liable as a co-conspirator in carrying out the discriminatory acts. (Pl. Opp. at 28.) Defendant argues that Plaintiffs should not be allowed to assert a new claim of conspiracy, and that Plaintiffs have failed to allege any actions of Defendant that infringed on the rights of Alleyne and Maccow. (Def. Reply ¶¶ 5-6.)

The Plaintiffs have failed to cite a specific statutory provision underlying their VICRA claim. However, as this Court has held, the pleading rules "do not require that a complaint include the particular statutory provisions underlying each count" but need only "provide sufficient notice of the grounds upon which the claim is based." *Miller v. V.I. Hous. Auth.*, 46 V.I. 623, 625, 2005 U.S. Dist. LEXIS 11146, at *4 (D.V.I. June 3, 2005) (Finch, J.) (citing *United States v. Jones*, 916 F. Supp. 383, 385 (D.N.J. 1995)).

Plaintiffs' allegations of employment discrimination provide Defendant with notice that the acts alleged constitute violations of § 451 of Title 24 (Chapter 17), § 64 of Title 10 (Chapter 5), and § 3 of Title 10 (Chapter 1) of the Virgin Islands Code. Section 451 of Title 24 (chapter 17) provides in pertinent part that:

> (a) Notwithstanding the provisions of any other law it shall be unlawful employment practice or unlawful discrimination:

> (1) For an employer *to refuse to hire or employ or to bar or discharge from employment*, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;

(2) For an employer *to discriminate against* any individual in *compensation or in the terms, conditions, or privileges of employment* because of race, sex, age, religion, color or ancestry.

24 V.I.C. § 451 (emphasis added.)

Section 64 of Title 10 (chapter 5) provides that:

(1) It shall be an unlawful discriminatory practice:

(a) For an employer, because of age, race, creed, color, national origin, place of birth, sex and/or political affiliation of any individual, to refuse to hire or employ or to bar or *to discharge from employment* such individual or *to discriminate against such individual in compensation or in terms, conditions or privileges of employment.*

10 V.I.C. § 64 (emphasis added).

Section 3(b) of Title 10 (chapter 1) provides in relevant part that:

No person, being the owner, proprietor, superintendent, manager, agent, or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, *deny employment* in or at such business to any applicant therefor, or *engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin,* subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. § 3(b) (emphasis added.)

### 1. Private cause of action for employment discrimination claims under VICRA

Defendant Paulus correctly asserts that chapter 17 does not provide for a private cause of action, and thus, Plaintiffs claim of employment discrimination pursuant to Title 24 must be dismissed. *Williams v. Kmart Corp.*, Civ. No. 1999-0102, 2001 U.S. Dist. LEXIS 9183, at *6 (D.V.I. Mar. 5, 2001) (citing *Hazel v. Executive Airlines, Inc.*, 886 F. Supp. 526, 527 (D.V.I.1995)), *rev'd on other grounds* by *Warner v. Kmart Corp.*, Civil No. 2005-0128, 2009 U.S. Dist. LEXIS 44502, at *55 (D.V.I. May 27, 2009))). As the Court discussed in *Hazel*, Chapter 17, pursuant to § 457(a) merely creates a limited right of action in the nature of a writ of review. *Hazel*, 886 F. Supp. at 527.

The Court also agrees with Paulus that chapter 5 of Title 10 does not provide a private cause of action. *Speaks v. Gov't of the V.I.*, 2009 U.S. Dist. LEXIS 3565 at *11 (D.V.I. Jan. 14, 2009) (finding that the text of the statute did not contain "any language in the text and structure of the statute to imply the creation of a personal right of action" in chapter 5); *see also Miller*, 46 V.I. at 630-31 (overturning prior ruling in *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp. 2d 600 (D.V.I. 2003) that a private remedy existed under chapter 5).[3]

On the other hand, Chapter 1 does provide for a private cause of action. *Figueroa*, 188 F.3d at 178 (finding that the language of section 7 of Chapter 1, Title 10 specifies a private cause of action). Section 7 of Title 10 of the Virgin Islands Code provides as follows:

---

[3]As Plaintiffs note, the Court has not spoken with one voice on this issue over the years. *See, e.g., Ramos v. St. Croix Alumina*, L.L.C., 277 F. Supp. 2d 600 (D.V.I. 2003) (finding private right of action under chapter 5); *Frorup-Alie v. V.I. Hous. Fin. Auth.*, Civ. No. 2000-0086, 2003 U.S. Dist. LEXIS 25395, at *12 (D.V.I. Oct. 24, 2003) (holding that the additional remedies provided through the Civil Rights Commission in Chapter 5 are not exclusive remedies for violations specific to Chapter 5); *but see Whitmore v. HEPC Sugar Bay, Inc.*, Civ. No. 2000-63, 2002 U.S. Dist. LEXIS 4350 (D.V.I. Mar. 12, 2002) (finding that plaintiff had no private cause of action for an alleged violation of her civil rights under chapter 5 of title 10 of the Virgin Islands Code); *Miller*, 46 V.I. at 630-31 (same); *Bostic v. AT&T of Virgin Islands*, 2003 WL 25322909, at *3 (D.V.I. April 16, 2003) (same); *Speaks*, 2009 U.S. Dist. LEXIS 3565, at *11 (same); *Haase v. Gov't of the V.I.*, 2009 U.S. Dist. LEXIS 107445, at *18 (D.V.I. Nov. 17, 2009) (same). However, since 2005 the Court has consistently held that no private remedy is provided in chapter 5. The Court finds that the recent cases are well-reasoned and declines to depart from those holdings at this juncture. Any deficiencies that may be present in the Virgin Islands Civil Rights statute, or any inefficiency of any of the agencies created therein, should be addressed by the Legislature rather than the Judiciary. *See, e.g., Miller*, 46 V.I. at 631 (the court could not "engage in re-formulating the laws of the Territory of the Virgin Islands" but left that task to the Legislature). With respect to the Plaintiff's reliance on the Rules and Regulations of the Commission, the Court does not find that the Commission has interpreted chapter 5 to include a private remedy as Plaintiff argues; the fact that the Commission may delay action on a civil complaint "based on the same grievance" as alleged in a complaint brought in a different proceeding does not confirm plaintiffs' argument; a set of facts setting forth a grievance alleging violations of chapter 5 may also support a cause of action in the court based on a different statutory provision prohibiting discrimination. For example, there is some overlap between prohibited discriminatory conduct in chapter 1, which provides for a private action, with that of chapter 5. Thus, the fact that a plaintiff has a grievance filed with the Commission does not mean that the plaintiff's complaint filed in court was brought pursuant to chapter 5. Plaintiff also proffers a letter from Commission Executive Director Lunsford Williams to Plaintiffs' counsel. (Opp., Ex. 6, Lunsford Letter, dated April 24, 2006). In the letter, Williams indicates that the Commission required information about the findings made by the Department of Labor and EEOC prior to completing the review process of Plaintiffs' claims. The letter does not suggest that the Commission is waiting for the district court to render a decision. The Court concludes that the Commission has not articulated an "authoritative" interpretation of chapter 5 that the Court must defer to. *Pinho v. Gonzales*, 432 F.3d 193, 207 (3d Cir. 2005) (citations omitted.)

Penalties for violations:

Whoever, whether as *owner, officer, manager, agent, or employee* of any *business or industrial establishment*, labor organization, place of public accommodation, resort or amusement, or club, violates any of the provisions of this chapter, shall, for each and every such violation, be --

*(1) liable in actual damages*, and in addition, thereto, *to punitive damages* not to exceed $5,000 to be recovered in a civil action by the person aggrieved thereby or by any resident of the United States Virgin Islands to whom the person aggrieved may assign his cause of action; and

(2) fined not more than $2,000 or imprisoned not more than one year, or both. The owner or owners of any business where an offense mentioned herein has been *committed by his or its officer, manager, agent, or employee*, such owner or owners shall be *severally and/or jointly liable with the offender* for the actual and punitive damages provided for herein.

10 V.I.C. § 7 (emphasis added.)

## 2. Sufficiency of facts to support claim of employment discrimination under 10 V.I.C. § 3.

In order to avoid dismissal pursuant to 12(b)(6), Plaintiffs have to present factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs' Amended Complaint makes limited reference to Paulus' involvement in the alleged discriminatory conduct of his employer HOVENSA. The Amended Complaint states that (1) Paulus was involved in Berrios' transfer to the Turnaround Department; and (2) Paulus was personally involved in the discriminatory actions against Alleyne. (FAC. ¶¶ 47, 52.) However, Plaintiffs also argue in their Opposition that because Paulus acted in concert with the Defendants HOVENSA, Jacobs and Wyatt, he is liable for the actions of the other Defendants as a co-conspirator. (Pl. Opp.¶¶ 28, 30-32.)

Defendant Paulus questions Plaintiffs' right to allege conspiracy subsequent to the filing of the Amended Complaint. However, as stated above with respect to identifying the specific sections under Titles 10 and 24, a complaint need only "provide sufficient notice of the grounds upon which the claim is based." *Miller*, 46 V.I. at 625. Therefore, if Plaintiffs have alleged facts

sufficient to make out the elements of conspiracy in the Amended Complaint, the claim of conspiracy need not be listed as a separate count. *Doe ex rel. Doe v. Baxter Healthcare Corp.*, 178 F. Supp. 2d 1003, 1018 (S.D. Iowa 2001) (finding that plaintiff's failure to plead civil conspiracy in amended complaint did not preclude court from ruling on that issue where complaint sufficiently described the conduct comprising the alleged conspiracy).

### a. Civil conspiracy

"Under Virgin Islands law, a civil conspiracy consists of an agreement or combination to perform a wrongful act that results in damage to the plaintiff. A conspiracy may also consist of an agreement to do a lawful act by unlawful means." *Shomo v. Mugar Enters., Inc.*, Civil No. 2007-154, 2009 U.S. Dist. LEXIS 89198 , at *14 (D.V.I. 2009 Sept. 28, 2009) (citing *Gov't Guar. Fund of Repub. of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 456 (D.V.I. 1997) (quotations omitted)). *See also Gov't Guar. Fund of Repub. of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 457 (D.V.I. 1997) ("[t]he essence of a civil conspiracy is two or more persons agreeing in some form and acting on a desire to accomplish an unlawful end."). "[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso*, 588 F.3d at 185. However, a conspiracy can be proven by circumstantial evidence. *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001). "An express agreement among all conspirators is not a necessary element of civil conspiracy as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result." *Fisher v. Borough of Doylestown*, No. 02-4007, 2003 U.S. Dist. LEXIS 23943, at *8 (E.D. Pa. Dec. 10, 2003) (internal quotations and citation omitted). Moreover, "[t]he question of whether an agreement exists is for the jury to decide 'so long as there is a possibility that the jury can infer from the circumstances that [the alleged conspirators]

had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives.'" *Fisher*, 2003 WL 22937781, at *3 (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980)).

Although an overt act in furtherance of the conspiracy is required, "[n]ot every conspirator must commit an overt act . . . so long as at least one does." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (citing *Beck v. Prupis*, 529 U.S. 494, 503 (2000)). Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages." *Morganroth & Morganroth*, 331 F.3d at 414.

In the present case, the unlawful act charged is a violation of Plaintiffs' civil rights pursuant to 10 V.I.C. § 3, which prohibits an employer from "deny[ing] employment in or at such business to any applicant therefor, or engage[ing] in or permit[ting] any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin." 10 V.I.C. § 3(b). Moreover, 10 V.I.C. § 7 specifically assigns liability to "[a]ny person who conspires with another person" to engage in such discrimination and holds that person "liable as a principal violator and subject to all of the [same] penalties."

The Amended Complaint states that HOVENSA "aided and acquiesced with Jacobs and Wyatt" in carrying out discriminatory practices against West Indian Virgin Islanders with respect to limitations on hiring and compensation, and promotions. (FAC ¶¶ 23-24). The Amended Complaint also alleges that there were discriminatory practices in selecting West Indians for termination when the workforce was going to be reduced:

> When it was determined that some of the work being done by Jacobs would be transferred to Wyatt, the companies conspired to transfer a disproportionate number of local West Indian employees to the Turnaround Department and to transfer white stateside employees out of the Turnaround Department. That way, since the layoff would be predominantly in the Turnaround Department as a result of that work being transferred to Wyatt, the statesiders who were predominantly

white would retain their employment and the locals would be laid off to seek other employment.

(FAC ¶ 33.)

Plaintiffs specifically allege that Paulus was involved in Berrios' transfer to the Turnaround Department, an integral part of the scheme to terminate Plaintiffs as opposed to predominantly white statesiders. (*Id.* at 52.) Viewing the facts alleged in the light most favorable to the Plaintiffs as the nonmoving party, the Court concludes that this act constitutes an overt act, at least with respect to the alleged conspiracy to terminate Plaintiffs. Furthermore, taking as true the allegations concerning Paulus' position at HOVENSA, and the alleged relationship between Jacobs and HOVENSA, a reasonable jury could find that Paulus and other defendants had "reached an understanding to achieve the conspiracy's objectives." *Fisher*, 2003 U.S. Dist. LEXIS 23943, at *8. The Court concludes that Plaintiffs have sufficiently pled a civil conspiracy as to Defendant Paulus. Paulus' alleged conduct as a member of the alleged conspiracy is sufficient to sustain a claim of violation of 10 V.I.C. § 3.

### B. Intentional or Negligent Infliction of Emotional Distress

Plaintiffs also allege that "[t]he actions of the Defendants constitute intentional infliction of emotional distress[, or if] not intentional, then they constitute negligent infliction of emotional distress." (FAC ¶¶ 137-138.) Paulus argues that Plaintiffs have failed to allege conduct outrageous enough to satisfy a claim of intentional infliction of emotional distress. (MTD at 7.) He argues that Plaintiffs' claim for negligent infliction of emotional distress must fail because Plaintiffs have not alleged a physical injury, as is required for such a claim. (*Id.* at 8.) Plaintiffs respond that although the discrete acts of the Defendants, including Paulus, might not be outrageous, they are outrageous "when viewed in series." (Pl. Opp. at 56.) Regarding the negligence claim, Plaintiffs argue that because of the extreme nature of the alleged

discrimination, they "must be given the opportunity to show that Defendants' deliberate or negligent acts of discrimination caused them and physical and psychological injuries. . ." (*Id.* at 63.)

## 1. Intentional Infliction of Emotional Distress

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . ." Restatement (Second) of Torts § 46.[4]  It is not enough that the defendant act with intent to create distress; in order to incur liability, his conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . ." *Id.* cmt. d.  "It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (internal quotation and citation omitted).  However, Plaintiffs are correct in pointing out that some courts have found actionable claims for intentional infliction of emotional distress ("IIED") in employment discrimination suits.  *See, e.g., Codrington v. V.I. Port Auth.*, 911 F. Supp. 907, 918 (D.V.I. 1996) (dismissing IIED claim against plaintiff's employer, but refusing to dismiss the same claim against her direct supervisor); *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 428 (D.N.J. 1994) (refusing to grant defendant's motion to dismiss where plaintiff had alleged a pattern of discrimination which led to his IIED claim).  In those cases, however; the plaintiffs had alleged sufficient facts for the courts to find the IIED claims actionable.  For instance, in *Codrintgton*, a sexual harassment case, the plaintiff alleged that her supervisor had repeatedly tried to subject her to unwanted kissing touching, and sexual propositions, and had tried to rape her on one

---

[4] The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute… shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."  1 V.I.C. § 4.

occasion. *Codrington*, 911 F. Supp. at 918. And in *Bishop*, the plaintiffs allegations included claims that the defendants refused to promote her, made false accusations against her, excluded her from training, made her return to work two weeks after her surgery, and refused to allow her leave for radiation and chemotherapy treatments. *Bishop*, 864 F. Supp. at 428.

Unlike the plaintiffs in *Bishop* and *Codringon*, the Plaintiffs in the instant case have not made detailed allegations to support a pattern of outrageous conduct for their IIED claim. Instead, Plaintiffs have simply alleged that (1) Paulus is a management employee of HOVENSA; (2) Paulus, along with defendant Kramer, was responsible for Berrios' transfer to the Turnaround Department; and (3) Paulus, along with the other individual defendants, was personally involved in the discriminatory actions against Alleyne. These allegations simply do not rise to the level of conduct required for a finding of outrageousness to support an IIED claim. Accordingly, Plaintiffs' claim for intentional infliction of emotional distress against Paulus must be dismissed.

### 2. Negligent Infliction of Emotional Distress

The Restatement defines negligent infliction of emotional distress as follows:

If the actor "unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

Restatement (2d) of Torts § 313. Thus there are two elements required for a negligent infliction of emotional distress claim: physical injury and foreseeability. *Berry v. Jacobs IMC, LLC*, 99 Fed. Appx. 405, 410 (3d Cir. 2004); *Anderson v. Government of Virgin Islands*, 180 F.R.D. 284, 287 (D.V.I. 1998). Paulus argues that Plaintiffs' claim must be dismissed because Plaintiffs failed to allege both physical injury and foreseeability. However, in the Amended

Complaint, Plaintiffs did assert that "[e]ach of the Plaintiffs, as a result of the illegal discrimination based on race, national origin and color has suffered… physical and psychological injuries… which are expected to continue into the foreseeable future."  (FAC ¶ 122.)  Although the allegation of physical injury is bare, it is sufficient under the pleading requirements.  *See, e.g., Anderson*, 180 F.R.D. at 286 ("Since Rule 9 of the Federal Rules of Civil Procedure does not require that the tort of negligent infliction of emotional distress be plead with particularity, [plaintiff's] bare assertion of 'physical injuries' is enough to plead this element of the tort adequately.")  However, Plaintiffs have failed to meet the tort's foreseeability requirement, and the allegation that the physical injuries will continue "into the foreseeable future" does not suffice.  *Anderson*, 180 F.R.D. at 286 (explaining that "foreseeability" requires a plaintiff to plead that it was reasonably foreseeable that defendant's actions would lead to plaintiff's injuries; not that plaintiff would sustain injuries sometime in the foreseeable future); *see also Smith v. V.I. Water & Power Auth.*, Civ. No. 04-148, 2008 U.S. Dist. LEXIS 95852, at *29 (D.V.I. Nov. 24. 2008) ("To succeed on such a claim, plaintiff must show… that defendants should have realized its conduct carried an unreasonable risk of causing such injury.") (citations omitted).  Because Plaintiffs failed to demonstrate that Paulus' conduct carried a foreseeable risk of causing physical injury, the negligent infliction of emotional distress claim is dismissed.

### C.  Title VII and § 1981

Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

The Third Circuit has held, in line with several of its sister circuits, that Title VII does not provide for the liability of individual employees. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2000). *See also Marrero v. Brin*, 2009 WL 3181933, at *2 (D.V.I. Sept. 28, 2009) (Congress did not intend to hold individual employees liable under Title VII) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 184 (3d Cir.1997)). Thus, the cause of action alleged against Paulus pursuant to Title VII fails as a matter of law and must be dismissed.[5]

Section 1981 provides in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and *the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship*.

The rights protected by this section are protected against impairment *by nongovernmental discrimination* and impairment under color of State law.

42 U.S.C. § 1981 (emphasis added).

Unlike a Title VII claim, individual liability is not precluded under § 1981. Such liability is found "when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable." *Cardenas v.*

---

[5] Plaintiff points out that in Count VI of the amended complaint, the allegations are directed toward the "corporate Defendants" and not Paulus. (Opp. at 13 (citing FAC ¶ 141.)

*Massey*, 269 F.3d 251, 268 (3d Cir. 2001) (quoting *Al- Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir.1986). "Personal liability under section 1981 must be predicated on the actor's personal involvement." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotations and citation omitted). Thus, "[i]n order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Id. See also Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (same).

The allegation that Paulus transferred Berrios to the Turnaround Department in order to terminate his position at Jacobs sufficiently alleges the "personal involvement" of Paulus and an "affirmative link" to the discriminatory action. *Patterson*, 375 F.3d at 229. Therefore, the section 1981 claim will not be dismissed.

### D. Punitive Damages

Count VII is phrased as a prayer for a remedy rather than a cause of action and as such, must be dismissed. *See McDonald v. Davis*, 2009 U.S. Dist. LEXIS 17309, at *55-56 (D.V.I. 2009) (citing *Urgent v. Hovensa, LLC*, 2008 U.S. Dist. LEXIS 77455, at *31 (D.V.I. Oct. 2, 2008)). However, the Court's ruling is without prejudice to Plaintiffs' request for punitive damages at the appropriate stage of these proceedings. *Id.* at 56.

### E. Wrongful Discharge and Misrepresentation

Although both Plaintiffs and Defendant Paulus dispute whether Plaintiffs have sufficiently alleged facts in support of a claim of wrongful discharge or misrepresentation, the Court finds that these issues have not been raised in the Amended Complaint and thus the Court need not consider them here. With respect to Plaintiffs' claim of wrongful discharge, such claim is asserted only against HOVENSA and Jacobs. (FAC ¶¶ 127-130.) With regard to the tort of misrepresentation, Plaintiffs have only asserted the claim against HOVENSA. (FAC ¶¶ 131-

135.)  Accordingly, these claims must be dismissed as to defendant Paulus.

## IV.     Conclusion

Defendant Paulus' motion to dismiss will be granted in part and denied in part.  Plaintiffs have sufficiently alleged discriminatory conduct to support a cause of action pursuant to Chapter 1 (Title 10) of the Virgin Islands Code and 42 U.S.C. § 1981.  Additionally, a private cause of action is available under either statute and thus Defendant's motion to dismiss those claims will be denied.  However, Plaintiffs' claims of discriminatory conduct pursuant to Chapter 5 (Title 10) and Title 24 of the Virgin Islands Code or Title VII fail as a matter of law because there is no private cause of action pursuant to Chapter 5 or the relevant subsection of Title 24, and a Title VII allegation cannot be brought against an individual employee.  Plaintiffs' claim of intentional or negligent infliction of emotional distress must also be dismissed for failure to allege facts sufficient for such a claim.  The Court will not rule on Plaintiffs' claims of wrongful discharge or misrepresentation, as these claims were not asserted against Defendant Paulus.  The claim for punitive damages will be dismissed because it merely seeks a remedy and fails to state a cause of action.  An appropriate Order will be entered in conjunction with this Opinion.

**ENTER:**


Dated: July 29, 2010          _____/s/_____
                              RAYMOND L. FINCH
                              SENIOR U.S. DISTRICT JUDGE